UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER SHELBY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:24-CV-00086 AGF |
| ) | |
| RUSTY RATLIFF, et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

Self-represented plaintiff Christopher Shelby brings this action pursuant to 42 U.S.C. § 1983 for alleged violations of his civil rights. The matter is now before the Court upon the motion of plaintiff for leave to proceed in forma pauperis, or without prepayment of the required filing fees and costs. [ECF No. 3]. Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $57.04. *See* 28 U.S.C. § 1915(b)(1). As plaintiff is now proceeding in forma pauperis, the Court must review his complaint under 28 U.S.C. § 1915. Based on such review, the Court will direct plaintiff to file an amended complaint on the Court-provided form in compliance with the instructions set out below within twenty-one (21) days of the date of this Memorandum and Order. The Court warns plaintiff that his failure to comply with this Order could result in dismissal of this action.

**Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month

period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff is incarcerated at Moberly Correctional Center (MCC) in Moberly, Missouri. In support of his motion to proceed without prepaying fees and costs, plaintiff submitted an inmate account statement showing average monthly deposits of $285.21 and an average monthly balance of $157.90. [ECF No. 4]. The Court finds that plaintiff has insufficient funds in his prison account to pay the entire fee and will therefore assess an initial partial filing fee of $57.04, which is twenty percent of plaintiff's average monthly deposits. *See* 28 U.S.C. § 1915(b)(1).

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed in forma pauperis if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also*

*Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

## The Complaint

Plaintiff brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights against thirty-three (33) defendants employed at Moberly Correctional Center (MCC). He asserts twenty (20) claims for relief in his forty-page complaint, and his allegations against defendants span between February 24, 2022, and May 14, 2024, with no apparent link between the twenty (20) enumerated charges. Rather, plaintiff's claims appear to be a long list of alleged violations of his civil rights at MCC.

For example, plaintiff makes two (2) separate claims, Counts I and III, against MCC Cook, Gloria Anderson, on February 24, 2022, and December 2, 2022. The incidents appear unrelated to one another. In Count I, plaintiff claims that Anderson moved him to work a different shift to interfere with his recreation time, which he believes is a "protected right." And in Count III, plaintiff makes a conclusory claim that he was "retaliated" against when Anderson failed to allow him off work to go to a medical appointment for an undisclosed issue. Plaintiff also names seven

(7) other defendants between the two (2) counts who denied his Institutional Resolution Requests (IRRs), grievances and grievance appeals.

Plaintiff makes three (3) separate claims, Counts VII and XVII and XIX, against defendant Sergeant Unknown Kitchen. The first of the claims occurred on December 25, 2022, and the second two claims occurred on May 10, 2024. The first incident is unrelated to the second two incidents. In Count VII, plaintiff asserts that Kitchen verbally threatened him with bodily harm when escorting him to Administrative Segregation. In Counts XVII and XIX, plaintiff states that he engaged in a verbal exchange with Kitchen regarding the writing of a conduct violation by another officer, Dalton Smith. Plaintiff believes Kitchen asked Smith to write the conduct violation on his behalf. Plaintiff alleges that Kitchen verbally "threatened" to place him in segregation during the verbal exchange. Plaintiff also names seven (7) other defendants between the three (3) counts who denied his IRRs, grievances and grievance appeals.

Plaintiff next makes two (2) separate claims, Counts II and XII, against defendant Sergeant Dennis Woolfolk, on November 7, 2022, and March 7, 2023. Again, the incidents appear unrelated to one another. In both incidents he claims he was harassed and "retaliated against" based on verbal threats. Plaintiff also names seven (7) other defendants between the two (2) counts who denied his IRRs, grievances and grievance appeals.

Plaintiff makes two (2) separate claims, Counts IV and X, against defendant Case Manager Aaron LeGrande, on November 24, 2022, and February 16, 2023. The incidents appear unrelated to one another. In Count IV, plaintiff claims LeGrande was "deliberately indifferent" in placing plaintiff to work in food service knowing it was a hostile work environment. In Count X, plaintiff asserts that LeGrande "retaliated" against him by finding him guilty of a conduct violation written by Correctional Officer Bailey for failing to follow a direct order. Plaintiff also names six (6) other defendants between the two (2) counts who denied his IRRs, grievances and grievance appeals.

Plaintiff makes three (3) separate claims, Counts V, VIII and XX, against unidentified staff members in Housing Unit 2, covering dates December 7, 2022, December 25, 2022, and August 16, 2023. Again, the incidents appear unrelated to one another. In Count V, plaintiff claims that three unknown staff members left his cell in "disarray" on December 7, 2022, in "retaliation" two days after he filed grievances. Plaintiff, however, fails to identify the staff members who purportedly engaged in a cell search or connect them to the alleged grievances he filed. In Count VIII plaintiff complains that on or about December 25, 2022, unidentified staff in Housing Unit 2 packed his property when he was moved into Administrative Segregation; however, no property removal form was completed and some of his property was lost in the move. Plaintiff does not indicate if he filed a state replevin action due to the lost property. Last, in Count XX, plaintiff states that on or about August 16, 2023, while he was in a cell in Housing Unit 2 at MCC, he went on a hunger strike. He states that he did so because he felt harassed and as if his grievances were not being addressed. Plaintiff does not indicate that any named or unidentified defendants failed to address the alleged hunger strike. In addition to his specific claims, plaintiff also names eight (8) other defendants between the three (3) counts who denied his IRRs, grievances and grievance appeals.

Plaintiff makes eight (8) separate claims against nine (9) different defendants in Counts XI, XIV, XI, XIII, XIV, XV, XVI and XVIII. Again, the incidents appear unrelated to one another. In Count XI, plaintiff alleges that defendant Caramon Goosey falsely accused him of interfering with count by yelling at a female correctional officer on December 25, 2022. Plaintiff states that he was unlawfully retaliated against and harassed by Goosey and placed in segregation as a result.

In Count XIV, plaintiff alleges that on or about February 9, 2023, Correctional Officer Jacob Bailey "maliciously and violently" searched his cell in a "targeted cell search." Plaintiff

argues that this had to be a retaliatory cell search because his cell had also been searched the night prior, and Sergeant Woolfolk was working in the rotunda.

In Count XI, plaintiff alleges that on March 7, 2023, Correctional Officer Unknown Gaines singled him out of the 3:00 a.m. worker line to tell him that his grievances "accomplished nothing and that Sergeant Woolfolk would work wherever he wanted." Plaintiff alleges that this was harassment; however, plaintiff does not allege that he was disciplined by Gaines.

In Count XIII, plaintiff alleges that on March 21, 2023, recreation supervisor Unknown Love refused to rehire him for a job opening. Plaintiff believes this was done in retaliation for filing grievances against Missouri Department of Corrections personnel, but he does not indicate why he believes this except to state that he had previously been told by Love that he would be rehired for the open position. Plaintiff does not allege that he had filed any grievances against Unknown Love prior to that time.

In Count XIV, plaintiff alleges that on April 8, 2023, Sergeant Unknown Kennedy denied him access to "worker showers and ice." Plaintiff believes that this was "obvious retaliation for [his] filing grievances against DOC personnel" because he was "the only person that was denied these privileges."

In Count XV, plaintiff asserts that he was retaliated against and harassed on July 1, 2023, by Sergeant B. Johnson, Captain Unknown Kosfield, Lieutenant Unknown Heath and Correctional Officer Unknown Wood. Plaintiff states that he was scheduled for "special visits" for that weekend and was supposed to have the day off work, but he was ordered to go to work under threat of segregation by Sergeant Johnson. He claims that Wood laughed out loud when he "tried to plead [his] case." Plaintiff believes this was retaliatory because all other offenders were allowed the privilege he was denied. Plaintiff does not indicate the offenders he compares himself to.

In Count XVI, plaintiff asserts that on or about April 25, 2024, Case Manager Unknown Moss retaliated against him by denying him an acceptance into a therapeutic community, which he identifies as a criminal addiction thinking program. Plaintiff states that the only reason he could have been denied entry into the program was because he previously filed grievances against Moss' coworkers. He fails to explain the alleged causal connection for the alleged retaliation.

In Count XVIII, plaintiff alleges that on or about May 14, 2024, Case Manager Unknown Andrews "threatened to find everyone guilty of a conduct violation" unless plaintiff plead guilty to it. Plaintiff does not indicate how he believes this was unlawful.

In addition to his specific claims in Counts XI, XIV, XI, XIII, XIV, XV, XVI and XVIII, plaintiff also names six (6) other defendants between the eight (8) counts who denied his IRRs, grievances and grievance appeals.

For relief, plaintiff seeks damages and injunctive relief.

## Discussion

Based on a careful review and liberal construction of the filings before the Court, plaintiff has not adequately alleged claims to withstand review under 28 U.S.C. § 1915(e)(2). However, because plaintiff is self-represented and has presented serious allegations to the Court, he will be allowed to amend his complaint in accordance with the instructions set forth below. Plaintiff should consider the following legal issues in filing in his amended complaint.

**I.      Unrelated Claims Cannot be Brought in Same Suit**

After review of plaintiff's complaint, the Court finds that it does not comply with the Federal Rules of Civil Procedure. Plaintiff cannot assert in a single lawsuit, claims against different defendants that are related to events arising out of different occurrences or transactions. Rule 20(a)(2) of the Federal Rules of Civil Procedure governs joinder of defendants, and provides:

> Persons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or

arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

In other words, "Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). "Unrelated claims against different defendants belong in different suits, ... [in part] to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *Id.*

Plaintiff may, however, name a single defendant, and assert as many claims as he has against him or her. Rule 18(a) of the Federal Rules of Civil Procedure governs joinder of claims, and provides:

> A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party.

In this case, plaintiff's complaint brings a multitude of unrelated claims in his lawsuit. Namely, he asserts at least twenty (20) unrelated claims against thirty-three (33) defendants as set forth above. These claims are unrelated as they arise out of different occurrences or transactions. They cannot be brought in the same suit.

Even self-represented litigants are obligated to abide by the Federal Rules. *McNeil v. United States*, 508 U.S. 106, 113 (1993). As such, when filing an amended complaint, plaintiff should decide which of these claims he seeks to pursue in this case and include only defendants and allegations pertaining to that one claim in his amended pleading. Any separate, unrelated claims must be brought in a different lawsuit.

## II.     Official Capacity Claims

Plaintiff sues all defendants in their individual and official capacities. However, a "suit against a public employee in his or her official capacity is merely a suit against the public

employer." *Johnson v. Outboard Marine Corp.,* 172 F.3d 531, 535 (8th Cir. 1999); *see also Kelly v. City of Omaha, Neb.,* 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); *Elder-Keep v. Aksamit,* 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). In this case, the defendants appear to be MCC employees who are therefore, employees of the State of Missouri. Plaintiff cannot bring a claim for damages against the State of Missouri under § 1983 because the State is not a "person." *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (asserting that "neither a State nor its officials acting in their official capacity are 'persons' under § 1983"). Furthermore, "[a] claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment." *See Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999). As such, plaintiff should not bring official capacity claims against MDOC employees for money damages in amended complaint.

**III.   Conduct Violation Claims**

Plaintiff asserts a violation of his due process rights against several defendants in relation to allegedly improper investigation into his IRRs, grievances or grievance appeals which may or may not have led to plaintiff's placement in administrative segregation. The determination of whether prison officials denied an inmate due process involves a two-step inquiry. *Williams v. Hobbs*, 662 F.3d 994, 1000 (8th Cir. 2011).

In the administrative segregation context, "an inmate must show that the segregation created an 'atypical and significant hardship on him in relation to the ordinary incidents of prison life' to demonstrate that his liberty interest was curtailed." *Id.* (quoting *Rahman X v. Morgan*, 300 F.3d 970, 973 (8th Cir. 2002) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Once it has

been established that a liberty interest exists, the process necessary to protect that interest must be determined. *Id.*

As to what process is due, the "fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal citation omitted). When an inmate is deprived of privileges or placed in a special confinement status as punishment for past misconduct, due process requires a hearing beforehand. *Brown-El v. Delo*, 969 F.2d 644, 647 (8th Cir. 1992). Furthermore, examples of due process requirements include written notice of the charge; a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action; the right of the inmate to be present, call witnesses, and present documentary evidence; and, in limited situations, a counsel substitute. *See Wolff v. McDonnell*, 418 U.S. 539, 564-70 (1974).

Therefore, if plaintiff chooses to pursue his due process claim in his amended complaint, he must explain how administrative segregation created an atypical and significant hardship on him in relation to the ordinary incidents of prison life, and what process he was denied. Placement in disciplinary segregation does not, in and of itself, amount to an atypical and significant hardship. *See Portley-El v. Brill,* 288 F.3d 1063, 1065 (8th Cir. 2002) (recognizing that the Eighth Circuit has consistently held that disciplinary segregation is not an atypical and significant hardship under *Sandin).* Failure to sufficiently allege facts in support of his claim will result in dismissal for failure to state a claim.

## IV.    No Supervisor Liability under § 1983

Plaintiff seeks relief against several supervisors in his complaint who allegedly denied his grievances. However, this alone is not enough to state a claim against supervisory employees. "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780

F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights). "[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Reynolds v. Dormire,* 636 F.3d 976, 981 (8th Cir. 2011) (quoting *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987) (per curiam)). In addition, denying a grievance is not enough for personal involvement either. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the [constitutional] violations are responsible. ... Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.").

If plaintiff names individuals who are supervisors in his amended complaint, he must provide allegations as to how these supervisors were personally involved in, or directly responsible for, a violation of his constitutional rights. It is not enough for a supervisor to have denied plaintiff's grievances. Each supervisory employee at the Missouri Department of Corrections must have acted on their own to deny plaintiff his constitutional rights.

## V.     Conclusory Allegations

Plaintiff's complaint is rife with conclusory allegations against defendants. As noted above, to set forth a violation of a constitutional right pursuant to 42 U.S.C. § 1983, a plaintiff must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights. *Martin,* 780 F.2d at 1338; *see also S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) ("Government officials are personally liable only for their own misconduct."); *Krych v. Hvass,* 83 F. App'x 854, 855 (8th Cir. 2003) (affirming dismissal of pro se complaint against defendants who were merely listed as defendants in the complaint (not caption) and there were no allegations of constitutional harm against them). Although a pro se complaint is liberally construed and held to a less stringent standard than formal pleadings drafted

by attorneys, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), such pleadings cannot be conclusory, and must set forth facts that, taken as true, state a claim as a matter of law. *Johnson v. Stark*, 717 F.2d 1550, 1552 (8th Cir. 1983). A court will not supply additional facts or create a legal theory assuming facts that have not been pleaded. *Stone,* 364 F.3d at 914. Allegations of discomfort or inconvenience do not rise to the level of a constitutional violation. *See Morris v. Zefferi,* 601 F.3d 805, 809-10 (8th Cir. 2010); *Williams v. Delo*, 49 F.3d 442, 446 (8th Cir. 1995).

Many of plaintiff's allegations allege mere discomfort at MCC and assume legal theories, such as retaliation or harassment, but do not include factual information to substantiate plaintiff's assertions. Plaintiff cannot create a legal theory assuming facts that have not been pleaded. To set forth First Amendment retaliation, for example, plaintiff must allege (1) that he engaged in protected activity, (2) that the defendant's actions caused an injury to the plaintiff that would chill a person of ordinary firmness from continuing to engage in the activity, and (3) that a causal connection exists between the retaliatory animus and the injury. *Small v. McCrystal*, 708 F.3d 997, 1008 (8th Cir. 2013); *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004). Plaintiff, however, has failed to properly allege that a causal connect exists between the filing of his grievances and the alleged retaliation. He simply states in a conclusory manner that the alleged defendant engaged in retaliation against him. Such pleading practices are conclusory and cannot survive § 1915 frivolity review.

### Instructions for Filing an Amended Complaint

Plaintiff is advised that the filing of an amended complaint **completely replaces** the original complaint and all supplements, and so it must include all claims plaintiff wishes to bring. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect"); *see also Yaritz v. Dep't of Corrs.*, No. 23-2457, 2024

WL 3218545, at *1 (8th Cir. June 28, 2024) (per curiam) (affirming district court's dismissal of a pro se § 1983 complaint, finding no error in construing the "second amended complaint as the sole operative pleading"). Any claims from the original complaint or any supplements that are not included in the amended complaint will be deemed abandoned and will not be considered. Plaintiff must **type or neatly print** the amended complaint on the Court-provided Prisoner Civil Rights Complaint form, and the amended complaint must comply with the Federal Rules of Civil Procedure. *See* E.D. Mo. L.R. 2.06(A).

The Federal Rules of Civil Procedure require litigants to formulate their pleadings in an organized and comprehensible manner. Plaintiff is required to set out his alleged claims in a simple, concise, and direct manner, and the facts supporting his claims as to each named defendant. *See* Fed. R. Civ. P. 8(a)(2) (complaint should contain short and plain statement of claims); 8(d)(1) (each claim shall be simple, concise, and direct); 10(b) (parties are to separate their claims within their pleadings and the contents of which shall be limited as far as practicable to a single set of circumstances). Plaintiff should fill out the complaint form in its entirety.

In the "Caption" section of the complaint form, plaintiff must state the first and last name, to the extent he knows it, of the defendant or defendants he wants to sue. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). If there is not enough room in the caption, plaintiff may add additional sheets of paper. However, all the defendants must be clearly listed. plaintiff should also indicate whether he intends to sue each defendant in his or her individual capacity, official capacity, or both. Plaintiff should avoid naming anyone as a defendant unless that person is directly related to his claim(s).

In the "Statement of Claim" section, plaintiff should begin by writing the first defendant's name. In separate, numbered paragraphs under that name, plaintiff should set forth the specific facts supporting his claim or claims against that defendant, as well as the constitutional right or

rights that defendant violated. If plaintiff is suing more than one defendant, he should proceed in the same manner with each one, separately writing each individual defendant's name and, under that name, in numbered paragraphs, the factual allegations supporting his claim or claims against that defendant and the constitutional rights violated. **Plaintiff should only include claims that arise out of the same transaction or occurrence, or simply put, claims that are related to each other.** *See* Fed. R. Civ. P. 20(a)(2). Plaintiff's failure to make specific factual allegations against any defendant will result in that defendant's dismissal. Furthermore, the Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017).

If plaintiff is suing a defendant in an individual capacity, he is required to allege facts demonstrating the personal responsibility of the defendant for harming him. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (stating that § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights"). It is not enough for plaintiff to refer to a group of defendants and make general allegations against them. Instead, plaintiff must explain the role of each defendant so that each defendant will have notice of what he or she is accused of doing or failing to do. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim.").

After receiving the amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915. Plaintiff's failure to make specific factual allegations against a defendant will result in the dismissal of that defendant. If plaintiff fails to file an amended complaint on a Court-provided form within twenty-one (21) days in accordance with the instructions set forth herein, the Court will dismiss this action without prejudice and without further notice to plaintiff.

**Plaintiff's Motion for Appointment of Counsel**

Plaintiff has filed a motion for appointment of counsel. [ECF No. 2]. The motion will be denied at this time. In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). *See also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex. The Court will entertain future motions for appointment of counsel as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis [ECF No. 3] is **GRANTED.** *See* 28 U.S.C. § 1915(a)(1).

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $57.04 within **twenty-one (21) days** of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison

registration number; (3) the case number; and (4) that the remittance is for an original proceeding. *See* 28 U.S.C. § 1915(b)(1).

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to plaintiff a blank copy of the Court's Prisoner Civil Rights Complaint form.

**IT IS FURTHER ORDERED** that, within **twenty-one (21) days** of the date of this Order, plaintiff shall file an amended complaint on the Court-provided form and in compliance with the Court's instructions.

**IT IS FURTHER ORDERED** that upon submission of the amended complaint, the Court shall again review this action pursuant to 28 U.S.C. §1915.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 2] is **DENIED at this time.**

**Plaintiff's failure to timely comply with this Order shall result in the dismissal of this action, without prejudice and without further notice.**

Dated this 25th day of April, 2025.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE